UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHERYL DANTIN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-0065** |
| **JO ANNE B. BARNHART,**<br>**COMMISSIONER OF SOCIAL SECURITY** | **SECTION "I" (4)** |

### REPORT AND RECOMMENDATION

This is an action brought pursuant to **Title 42 U.S.C. § 405(g)** for judicial review of a final decision of the Commissioner of Social Security denying Cheryl Dantin's claim for Disability Insurance Benefits under the Social Security Act. The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

**I.     Factual Summary and Procedural History**

    **A.     Factual Summary**

Cheryl Dantin ("Dantin") filed a request for Social Security Disability Benefits on October 23, 2003. (Tr. 24). Cheryl Dantin was forty-nine-years-old at the time of her administrative hearing and has one year of college education. (Tr. 263). She has worked as an bookkeeper. *Id.* Dantin alleges that she has been disabled since January 2, 2003 due to chronic condyloma and hepatitis C. (Tr. 25).

    **B.     Procedural History**

Dantin's application for disability determination was denied on February 12, 2004.[1] (Tr. 25-28). A timely request for a hearing was filed on April 16, 2004. (Tr. 29).

On May 11, 2005, Administrative Law Judge Richard Abrams conducted a hearing and later issued an unfavorable decision on July 29, 2005. (Tr. 13-17). The ALJ found that Dantin had a severe medically determinable impairment consisting of hepatitis C. (Finding 3 Tr. 17). He found however that her impairments, neither singly or in combination, had accompanying clinical or laboratory findings that met or equaled the criteria for any impairment set forth in Appendix 1 to Subpart P of Regulations No. 4. (Finding 3, 4, Tr. 17). The ALJ further held that Dantin's testimony of pain and other subjective complaints and functional limitations were not credible to the extent of total disability. (Finding 5, Tr. 17).

He further held that Dantin retains the residual functional capacity to perform sedentary work compromised of a sit and stand option; an inability to crawl, balance or climb ladders or scaffolds; and avoiding hazards such as heights, vibration and dangerous machinery. (Finding 6, Tr. 17). He further found that Dantin remained capable of performing her past relevant work as a bookkeeper such that she is not disabled under the Act. (Finding 7, 8, Tr. 17)

## II.    Issues

The issues presented for review are:

1. Is the ALJ's determination that Dantin does not meet the 5.05 listing level requirement based upon substantial evidence?

2. Is the ALJ's decision based upon substantial evidence when he relied upon a non-examining physician?

## III.    Standard of Review

---

[1] This is a disability redesign prototype case and therefore Dantin requested a hearing before an ALJ after the initial level denial. (Tr. 29).

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the secretary. *Allen v. Schweitker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389 (1971); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981) (citations omitted).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence." *Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted . . . for a constructive period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423 (d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as meaning "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 2 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Commissioner applies a five-step sequential evaluation process. The rules governing the steps

of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at step five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**IV.   Analysis**

    **A.   5.05 Listing Level Requirement**

Dantin contends that she meets the 5.05 listing level requirements and that the ALJ's decision to the contrary is not based upon substantial evidence.  She further contends that the listing analysis that should have been applied by the ALJ was not applied such that the decision is not based upon substantial evidence.

The Commissioner contends that the ALJ's decision is based upon substantial evidence because the plaintiff failed to carry her burden that her impairments met or equaled any listing.

In determining that Dantin's hepatitis C was not disabling, the ALJ noted that she was diagnosed with hepatitis C in August 2003. *Id*.  He further noted that in September of that same year

a liver biopsy showed that she had chronic hepatitis C[2]. *Id.* He also noted that in January 2004, some four months later, her liver function studies were normal . *Id.*

The listings, unfortunately, does not directly deal with hepatitis C, although there is a listing for Chronic Liver Disease that includes chronic active hepatitis. However, because the symptoms can vary substantially, the listing also include some guidelines on how severe the condition must be. Specifically, the listing provides:

> 5.05 Chronic liver disease (e.g., portal, postnecrotic, or biliary cirrhosis; chronic active hepatitis; Wilson's disease).  With:
>
> A.    Esophageal varices (demonstrated by endoscopy or other appropriate medically acceptable imaging) with a documented history of massive hemorrhage attributable to these varices. Consider under a disability for 3 years following the last massive hemorrhage; thereafter, evaluate the residual impairment; or
>
> B.    Performance of a shunt operation for esophageal varices. Consider under a disability for 3 years following surgery; thereafter, evaluate the residual impairment; or
>
> C.    Serum bilirubin of 2.5 mg. per deciliter (100 ml.) or greater persisting on repeated examinations for at least 5 months; or
>
> D.    Ascites, not attributable to other causes, recurrent or persisting for at least 5 months, demonstrated by abdominal paracentesis or associated with persistent hypoalbuminemia of 3.0 gm. per deciliter (100 ml.) or less; or
>
> E.    Hepatic encephalopathy. Evaluate under the criteria in listing 12.02; or
>
> F.    Confirmation of chronic liver disease by liver biopsy (obtained independent of Social Security disability evaluation) and one of the following:

---

[2]Hepatitis C causes chronic liver disease. However the degree of the condition varies greatly. At one end of the spectrum some patients have no signs or symptoms of liver disease and completely normal levels of serum liver enzymes. Liver biopsy usually shows some degree of chronic hepatitis, but the degree of injury is usually mild and the prognosis may be good. Others, have severe hepatitis C with symptoms and HCV RNA in serum and elevated serum liver enzymes, they develop cirrhosis and end stage liver disease. In the middle are patients who have few or not symptoms, mild to moderate elevations in liver enzymes and an uncertain prognosis. Webmd, *Chronic Hepatitis C*, at www.webmd.com/hepatitis/chronic-hepatitis-C.

      1.        Ascites not attributable to other causes, recurrent or persisting for at least 3 months, demonstrated by abdominal paracentesis or associated with persistent hypoalbuminemia of 3.0 gm. per deciliter (100 ml.) or less; or

      2.        Serum bilirubin of 2.5 mg. per deciliter (100 ml) or greater on repeated examinations for at least 3 months; or

      3.        Hepatic cell necrosis or inflammation, persisting for at least 3 months, documented by repeated abnormalities of prothrombin time and enzymes indicative of hepatic dysfunction.

The record shows that on September 3, 2003 Dantin had a hepatic function panel performed. (Tr. 170). A hepatic function panel is a blood test to check if the liver is working.[3] Her AST and ALT levels were elevated. (Tr. 170). The normal range for AST is 0-40 and her level was 115. *Id.* The normal ALT level is 0-40 and her range was 172. *Id.* Her Bilirubin total was 0.5 mg/dl and the normal range was 0.1-1.2. (Tr. 170).

On September 23, 2003 a needle biopsy was performed in which the liver tissue was tested for damage. (Tr. 126). Dr. James Brown, a pathologist, concluded that Dantin had moderate chronic hepatitis C- Grade 3 with stage 3 fibrosis[4]. *Id.* Therefore, as required by Listing level 5.05, chronic liver disease was confirmed by liver biopsy.

---

[3] Webmd, *Liver Function Panel – Function Overview*, at http://www.webmd.com/digestive-disorders/tc/Liver-Function-Panel-Topic-Overview.

[4] Stage 3 fibrosis means that portal-central bridges but no nodular formation was present in Dantin's liver. Hepnet, *The Hepatitis Knowledge Newsletter,* Vol. 1 Issue 4, at www.hepnet.com/hkn/c14.html.

In addition to the presence of chronic liver disease, the regulations require the presence of ascites[5] not attributable to other causes, a serum bilrubin[6] of 2.5 mg per deciliter or greater, or hepatic cell necrosis or inflammation lasting for three months showing repeated abnormalities of prothrombin time and enzymes showing hepatic dysfunction.  *See* 20 C.F.R. Pt. 404. Supbpt. P., app.1 Pt. A §5.05.

The required longevity of increased levels of the AST, ALT and bilirubin are not present in the record.  For example on December 26, 2003, a bilirubin test was performed and the results were 0.6 mg/dL and the normal reference level was <1.3mg/dl.  (Tr. 200).  Her AST level was 16 with a reference range < 45 U/L.  (Tr. 201).  Her ALT lever was 24 with a reference level of < 45 U/L. *Id.*  On January 7, 2004, another hepatic function panel was performed by Quest Diagnostics.  (Tr. 135).  Her bilirubin total was 0.4 with a reference range per Quest of 0.2-1.3 mg/dl.  *Id.*  Her AST level was 16 and the reference range was 2-35 U/L.  *Id.*  Her ALT level was 24 and the normal reference range was 20-120 U/L.  *Id*.

On January 26, 2005 a comprehensive metabolic panel was perform and her bilirubin total was in normal range.  On this occasion, her level was 0.4 and the range as listed is between 0.1-1.0 mg/dl per Ochsner Clinic.  ( Tr. 252)

Applying the listing level 5.05 to Dantin's subsequent hepatic tests  shows that her bilrubin level did not reach 2.5 mg per deciliter for that four month period.  Further her AST and ALT's levels, although originally elevated, were not elevated for the time period required by the

---

[5]Ascites are an accumulation of peritoneal fluid.  Family Practice Notebook, *Ascites, Abdominal Dropsy*, at http://www.fpnotebook.com/GI37.htm

[6] Bilirubin is a marker of liver function and protein synthesis.  Normal bilirubin<1.0mg/dl.  Family Practice Notebook, *Bilirubin*, at  http://www.fpnotebook.com/GI126.htm.

regulations. (Tr. 135).[7] Therefore, the ALJ was correct when he concluded that while Dantin has chronic hepatitis C, her condition does not meet the 5.05 listing level requirement.

### B. Use of Non-treating Physician Opinion

Dantin contends that the ALJ improperly relied on the non-examining physician's assessment. She contends that because Dr. Laing is not a board certified specialist in the area of liver disease and gastro-intestional condition, and had not treated Dantin, the ALJ improperly relied upon his testimony at the hearing. Therefore, Dantin contends that Dr. Laing's opinion should be disregarded as it is not consistent with the objective medical findings.

The Commissioner contends that the ALJ properly relied upon Dr. Laing the internal medicine specialist. She contends that the plaintiff's attorney failed to ask the medical expert why it was in her opinion that Dantin did not satisfy the 5.05 listing level.

It is settled that the ALJ may use a non-examining medical advisor in a complex case for the purpose of explaining medical problems. *Haywood v. Sullivan*, 888 F.2d 1463, 1467 ( 5th Cir. 1989). He is a neutral adviser. *Richardson,* 402 U.S. 389 at 408. . The non-examining medical advisors' testimony is based on a review of the evidence of record as well as on testimony taken at the hearing. *Pitzer v. Sullivan* 908 F.2d 502, 506 n. 4 ( 9th Cir. 1990).

The ALJ noted in his opinion that he relied upon non-examining medical advisor who opined that Dantin's liver disease was not a disabling condition. (Tr. 14). He further noted that in addition to the opinion he considered the normal liver function panel in January 2004. (Tr. 15).

---

[7]While the plaintiff cites to four different pages in the record for the proposition that Dantin's ALT and AST was elevated for an extended period, the Court notes that these pages either refer to the same test, or lack any corresponding diagnostic tests.

The substance of Dantin's objection is that her lawyer objected to the qualifications and the ALJ ignored the objection, permitted the testimony and relied upon the testimony of the internal medicine specialist Dr. Laing.  The record shows however that counsel stipulated that Dr. Laing could in fact testify as an medical expert in the case.  (Tr. 280).  While she expressed concerned about his qualifications, any objection was waived by her stipulation to his qualifications as a medical expert.  (Tr. 280, 288).

Further, Dr. Laing testified that as a internal medicine specialist he had to undergo training and testing in the treatment of the gastrointestinal tract and specifically liver function.  (Tr. 281).  He further testified that he had previously examined for certification purposes airline captains who on occasion presented with liver disease.  (Tr. 281).  The transcript shows he further testified that since becoming an internal medicine specialist, he also has taken continuing medical education courses in liver disease and hepatitis C.  (Tr. 286).  The ALJ accepted Dr. Laing as an expert trained in internal medicine with fellowship in allergy and immunology.  Counsel objected as Dr. Laing being categorized as an expert on liver disease.  The objection was noted by the administrative law judge.

The Court is of the opinion that the ALJ did not err when relying upon the medical opinion of Dr. Laing regarding whether the medical evidence of record supported a determination of disability pursuant to listing level 5.05.  Additionally, it is clear that the medical records as noted by the ALJ confirm that while Dantin has hepatitis C, the degree of the disease does not meet the listing level requirements as demonstrated by the analysis of medicals contained in the earlier section of this opinion.  The Court finds that the ALJ did not err when he relied upon the non-examining medical advisor, Dr. Laing such that his opinion is based upon substantial evidence.

## V.       Recommendation

For the reasons assigned herein, it is **RECOMMENDED** that the ALJ's decision denying Cheryl Dantin's Disability Insurance Benefits be **AFFIRMED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 21st day of August, 2007.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**